# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>QUINCY LEAFSTEDT,<br><br>            Defendant. | Case No. 3:15-cr-00047-SLG |

## ORDER REGARDING SECOND MOTION FOR RECONSIDERATION
## (COMPASSIONATE RELEASE)

Before the Court at Docket 73 is defendant Quincy Leafstedt's Second Motion for Reconsideration. No response from the government is required for the Court's determination of the instant motion.

Mr. Leafstedt again seeks reconsideration of the Court's order at Docket 62, in which the Court denied Mr. Leafstedt's motion for compassionate release because the 18 U.S.C. § 3553(a) factors did not support a reduction in sentence and because Mr. Leafstedt had not shown that his obesity constituted extraordinary and compelling reasons for release.[1] Upon motion of Mr. Leafstedt, the Court previously reconsidered its denial of compassionate release, finding that even if Mr. Leafstedt had "shown 'extraordinary and compelling' health-related reasons for a reduction in sentence," "the nature and circumstances of the offense,

---

[1] Docket 62 at 4–8.

coupled with the lack of any rehabilitation and an inadequate release plan" meant that the § 3553(a) factors still did not support a reduction in sentence.[2]

I. **Applicable law**

Local Rule 47.1 permits reconsideration if the moving party shows a "manifest error of the law or fact," "discovery of new material facts not previously available," or an "intervening change in the law."[3] Mr. Leafstedt has submitted "new material facts" that were not provided to the Court in Mr. Leafstedt's previous motion for compassionate release or in his first motion for reconsideration.[4] The Court will reconsider its previous orders and determine if modification is warranted.

The Court has previously set forth the standard for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[5]

II. **Extraordinary and compelling reasons**

Mr. Leafstedt, who is housed at Terminal Island FCI, raises two issues in his motion for reconsideration: That new COVID-19 cases have been reported at Terminal Island FCI and that an independent review of Terminal Island FCI showed

---

[2] Docket 63 (first Motion for Reconsideration); Docket 72 (order).

[3] D. Ak. Loc. Crim. R. 47.1(g)(1). Mr. Leafstedt cites to Federal Rule of Civil Procedure 60(b)(6), which is inapplicable in this criminal proceeding.

[4] Docket 73-1.

[5] Docket 62 at 2–3, 6–7.

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 2 of 7
Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 2 of 7

"numerous deficiencies in the prison's current pandemic-related procedures that continue to leave the facility vulnerable to another outbreak."[6]

Terminal Island FCI was "a COVID-19 'hot spot'" earlier this year.[7] By late summer, however, Terminal Island had "almost no active virus in the institution other than two individuals in isolation."[8] As of the date of this order, Terminal Island FCI reports three infected staff members and no active inmate cases of COVID-19.[9] Indeed, the current number of reported cases at Terminal Island FCI is *lower* than when the Court denied the first motion for reconsideration last month.[10] The current reported number of cases does not support Mr. Leafstedt's claim that he is now at a greater risk of contracting COVID-19.[11] As stated by the District of Hawaii three weeks ago in denying compassionate release to a Terminal Island FCI inmate who, like Mr. Leafstedt, is obese:

> While the facility once had a high number of confirmed coronavirus cases, that is not the current situation. As of the date of this Order [September 4, 2020], the BOP's coronavirus-related data for Terminal

---

[6] Docket 73 at 1.

[7] *United States v. Ofa*, Case No. 17-00145-JMS, 2020 WL 4496497, at *2 (D. Haw. Aug. 4, 2020).

[8] Docket 73-1 at 11 (August 2020 report of Dr. Michael Rowe, *Report on Current Management and Future Risks Associated with COVID-19 Infection at FCI Terminal Island*).

[9] Bureau of Prisons, COVID-19 resource page (available at www.bop.gov/coronavirus/) (last accessed Sept. 25, 2020).

[10] *See* Docket 70 at 2 (noting that in August 2020, FCI Terminal Island reported three inmates with active COVID-19 cases and six staff members with active cases).

[11] *See, e.g.*, *United States v. Urias*, Case No. 4:17-cr-00181-DCN-3, 2020 WL 5549149, at *4 (D. Id. Sept. 15, 2020) (denying compassionate release in part "based upon the current low numbers of COVID-19 cases at FCI Terminal Island").

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 3 of 7
Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 3 of 7

Island FCI indicates there are: 3 inmates positive; 0 staff positive; 10 inmates deaths; 0 staff deaths; 621 inmates recovered; and 23 staff recovered. In other words, the number of positive cases at Terminal Island FCI is approximately 0.3% of the inmate population. Rodrigues indicts the BOP's efforts to contain the virus *in the past*, but, statistically, Terminal Island FCI is now faring better than the surrounding area of Los Angeles County. Thus, the present statistics for Terminal Island FCI are hardly "extraordinary and compelling."[12]

Mr. Leafstedt also relies on an expert report—submitted in relation to a civil lawsuit pending in the Central District of California—in which Dr. Michael Rowe reviewed the COVID-19 conditions and procedures at Terminal Island FCI.[13] Mr. Leafstedt asserts that the report "documented numerous deficiencies in the prison's current pandemic-related procedures."[14] Mr. Leafstedt does not acknowledge that although the report identified practices at Terminal Island that could have contributed to the high number of cases there, the report also asserts that now "FCI Terminal Island has instituted many appropriate practices and, overall, is complying with the most current CDC recommendations for correctional facilities."[15] Moreover, the filing of the report may well trigger Terminal Island FCI taking steps to adopt the report's recommendations to better protect staff and

---

[12] *United States v. Rodrigues*, No. 16-CR-00529-DKW-1, 2020 WL 5351029, at *5 (D. Haw. Sept. 4, 2020), reconsideration denied sub nom. *UNITED STATES OF AMERICA, Plaintiff, v. SHAWN RODRIGUES*, Defendant., No. 16-CR-00529-DKW-1, 2020 WL 5634310 (D. Haw. Sept. 21, 2020) (emphasis in original) (footnotes omitted).

[13] Docket 73-1 (August 2020 report of Dr. Michael Rowe, *Report on Current Management and Future Risks Associated with COVID-19 Infection at FCI Terminal Island*).

[14] Docket 73 at 1.

[15] 73-1 at 11.

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 4 of 7

Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 4 of 7

inmates. Even with added precautions, Terminal Island FCI "remains and will remain constantly teetering on the brink of a recurrent outbreak, as with so many communities and institutions."[16] While Dr. Rowe's report identifies some less-than-ideal practices at Terminal Island FCI, it does not support Mr. Leafstedt's claim that "nothing has changed in the intervening months."[17]

The new information presented by Mr. Leafstedt does not constitute "extraordinary and compelling reasons" for compassionate release. However, consistent with its previous orders, the Court assumes without deciding that Mr. Leafstedt's combination of obesity and hypertension may constitute "extraordinary and compelling reasons" for compassionate release pursuant to 18 U.S.C. § 3582(c).[18]

## III. 18 U.S.C. § 3553(a) factors

In considering the § 3553(a) factors, a court "should assess whether [they] outweigh the 'extraordinary and compelling reasons' warranting compassionate release."[19] As the Court has now indicated multiple times, "the nature and circumstances of Mr. Leafstedt's child pornography offense, which involved

---

[16] Docket 73-1 at 5.

[17] Docket 73 at 3.

[18] *See United States v. Payton*, Case No. 3:18-CR-4-CRS, 2020 WL 5649480, at *1 (W.D. Kentucky Sept. 22, 2020) ("Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the court addresses motions for compassionate release . . . with the gravity of the situation in mind.").

[19] *United States v. Ebbers*, 432 F.Supp.3d 421, 431 (S.D.N.Y. 2020).

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 5 of 7
Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 5 of 7

particularly vulnerable victims, weigh heavily in favor of him remaining in custody."[20] Mr. Leafstedt has not presented any new information to dispel the Court's previously expressed concerns: There is still no evidence in the record that Mr. Leafstedt has engaged in any sex offender treatment or other rehabilitative programming specific to child pornography offenders.[21]

Mr. Leafstedt contends that "there is an ongoing risk to public safety if Mr. Leafstedt remains incarcerated" and that he "poses a far greater risk to the public if he remains housed" at Terminal Island FCI.[22] This claim is illogical. It is possible that Mr. Leafstedt *himself* may face a greater risk of contracting COVID-19 if he remains at Terminal Island FCI instead of being released. But, as an untreated sex offender, he poses a greater risk *to the public* if he is released than if he continues to serve his sentence.

## CONCLUSION

Assuming that Mr. Leafstedt has shown "extraordinary and compelling" health-related reasons for a reduction in sentence, this Court again denies his request for compassionate release because the § 3553(a) factors, in particular the danger to minor children, substantially outweigh any extraordinary and compelling reasons for release in this case.

---

[20] Docket 72 at 8.

[21] Docket 72 at 4.

[22] Docket 73 at 2, 7.

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 6 of 7
Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 6 of 7

In light of the foregoing, IT IS ORDERED that the Second Motion for Reconsideration at Docket 73 is DENIED.

DATED this 28th day of September, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:15-cr-00047-SLG, *United States v. Leafstedt*
Order Re Second Motion for Reconsideration (Compassionate Release)
Page 7 of 7
Case 3:15-cr-00047-SLG   Document 74   Filed 09/28/20   Page 7 of 7